UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| WILLIAM MASTERS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:17-cv-00006-MFU |
| | ) | |
| HARRISON & JOHNSTON, PLC, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

*COMES NOW,* the Defendant, HARRISON & JOHNSTON, PLC ("H&J") by and through

counsel, and in Opposition to the Motion for Summary Judgment filed by Plaintiff, William Masters

("Masters"), and in support of its Cross-Motion for Summary Judgment, states as follows:

**I.      Statement of Undisputed Material Facts**

The following facts are not in dispute and are dispositive of this matter:

1.      In or about late 2015 or early 2016, Stephen L. Pettler, Jr., an attorney and the Managing Member of H&J was contacted by Dr. Mark Landrio, the Manager of Neurologic Associates, PLC, a long-time client of H&J, to discuss the filing of suits to collect unpaid amounts due Neurologic Associates, PLC (Affidavit of Stephen L. Pettler, Jr., ¶3).[1]

2.      In discussion with Dr. Landrio in late 2015 or early 2016, Mr. Pettler was advised that Neurologic Associates, PLC utilized a medical billing company, J.D. Matthews & Associates, which issued billings and administrated collection of payments. Mr. Pettler was told J.D. Matthews & Associates would "work" unpaid accounts for varying periods of time and eventually submit them to Neurologic Associates, PLC to be "written off." Dr. Landrio indicated he wanted to explore whether the unpaid accounts were worth pursuing through legal action rather than just writing them off (Affidavit of Stephen L. Pettler, Jr., ¶4).

3.      In his discussions with Dr. Landrio in late 2015 or early 2016, Mr. Pettler advised Dr.

---

[1]The Affidavit of Mr. Pettler was filed contemporaneously with H&J's Cross Motion for Summary Judgment and this Memorandum.

Landrio regarding the statute of limitations for collecting open accounts and unpaid agreements to pay. Mr. Pettler informed him that H&J could not collect any accounts which were unpaid for more than five (5) years because they are barred by the statute of limitations. Mr. Pettler and Dr. Landrio also discussed accounts where debtors were making payments over time. Mr. Pettler informed Dr. Landrio that if there was payment activity on the open account within the five-year statute of limitations, H&J could file suit to collect those amounts (Affidavit of Stephen L. Pettler, Jr., ¶5).

4.    Dr. Landrio and Mr. Pettler engaged in further discussions regarding terms of compensation for collection of the accounts and the logistics of what information would be needed by the firm to prepare suits (Affidavit of Stephen L. Pettler, Jr., ¶6).

5.    Dr. Landrio and Mr. Pettler also discussed the fact that J.D. Matthews & Associates had copies of each patient's "promise to pay" documentation, statement of the patient's charges, and statements of the amounts due from each patient. Mr. Pettler and Dr. Landrio further discussed the fact that, with regard to accounts where partial payments were made by patients over time, payments were sometimes made to Neurologic Associates, PLC and the resulting adjusted account balance was maintained by Neurologic Associates, PLC rather than J.D. Matthews & Associates. For this reason, H&J and Neurologic Associates, PLC agreed that Neurologic Associates, PLC would obtain all of the necessary paperwork from J.D. Matthews & Associates for each open account and Neurologic Associates, PLC would then review the accounts for any adjusted account balances and to determine that the account was eligible for collection due to the charges being incurred or payment having been made on the account within five (5) years. After such determination had been made, Neurologic Associates, PLC would then forward all eligible open accounts to H&J for filing of suit and prosecution of the same upon the agreed compensation terms (Affidavit of Stephen L. Pettler, Jr., ¶7).

6.    At all times relevant to this proceeding, it was understood and agreed between H&J and Neurologic Associates, PLC that all accounts Neurologic Associates, PLC provided to H&J for filing of suit were accounts which either: (1) included charges that were incurred within the last five (5) years; or (2) were open accounts on which payment had been received from the debtor within the last five (5) years (Affidavit of Stephen L. Pettler, Jr., ¶8).

7.    In July, 2016, Neurologic Associates, PLC provided H&J account information for 442 accounts in accordance with the agreement between the companies, including Mr. Masters' account (Affidavit of Stephen L. Pettler, Jr., ¶9).

8.    On November 8, 2016, H&J filed a Warrant in Debt on behalf of Neurologic Associates, PLC against Mr. Masters seeking $392.99 together with interest, costs and attorney's fees of $500 at Case No. GV16004149-00 in the General District Court for the City of Winchester. The return date set for the Warrant in Debt was January 12, 2017 (Affidavit of Stephen L. Pettler, Jr., ¶10).

9.      Shortly after Mr. Masters was served with the Warrant in Debt, Mr. Masters contacted Amy K. Slaughter, the attorney with H&J who filed the Warrant in Debt against Mr. Masters.  He informed her that he believed the amount due was uncollectible due to the lapse of the statute of limitations (Affidavit of Stephen L. Pettler, Jr., ¶11).

10.     After being contacted by Mr. Masters, Ms. Slaughter informed Mr. Pettler, the Managing Member of the firm, of Mr. Master's communication.  Upon learning the same, H&J commenced an investigation by contacting staff at Neurologic Associates, PLC to confirm that there had indeed been activity on Mr. Master's account within the past five (5) years (Affidavit of Stephen L. Pettler, Jr., ¶12).

11.     In response to H&J's request to review the Masters account balance information, H&J was advised by Neurologic Associates, PLC that no activity had occurred on Mr. Masters' account within the applicable statute of limitations.  The account was sent to H&J for collection by mistake (Affidavit of Stephen L. Pettler, Jr., ¶13).

12.     Immediately upon discovering that the Masters account had been delivered to H&J by mistake and that it was not an "active" account, H&J caused the suit against Mr. Masters to be dismissed with prejudice by Order entered December 15, 2016 and before the return date of January 12, 2017, the date on which Mr. Masters would have been required to respond to the filing (Affidavit of Stephen L. Pettler, Jr., ¶14).

## II.     Standard on Summary Judgment

Summary judgment is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810 (4th Cir. 1995). All inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" as opposed to evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 234. 249-250 (1986). The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Spencer v.*

*Hendresen-Webb Inc.*, 81 F. Supp. 2d 582 (D. Md. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden then shifts to the non-moving party to show specific facts that demonstrate there is a genuine issue for trial.

### III.    Argument

15 U.S.C.S. § 1692k (c)("Intent") provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

To establish bona fide error defense under 15 USCS § 1692k(c), a debt collector has to prove: (1) that the violation was unintentional; (2) that the error was bona fide, that is, if made, it was an error made in good faith, a genuine mistake as opposed to a contrived mistake; and (3) that it employed procedures reasonably adapted to avoid error. The debt collector need not employ procedures that would catch every error before it was made, but rather, it has to have reasonable procedures to prevent errors to succeed in its defense. *Reed v AID Assocs.* (2008, SD Ind) 573 F. Supp 2d 1105.

In the instant matter, H&J and its client, Neurologic Associates, PLC, established procedures to verify that accounts sent to H&J for suit filing were "active" within the applicable statute of limitations. Because Neurologic Associates, PLC outsourced its billing and collections, the information regarding all accounts handled by the billing company had to be reviewed and verified against records maintained by Neurologic Associates, PLC to determine whether debtors had been making payments on their open accounts. Since Neurologic Associates, PLC had to undertake this review, and in order to more efficiently process the accounts for filing, H&J and Neurologic Associates, PLC agreed that Neurologic Associates, PLC would "weed out" claims barred by the statute of limitations before sending them to H&J and only "active cases" would be forwarded for

suit filing.

The foregoing procedure was reasonably adopted to avoid error as Neurologic Associates, PLC had two different account records which had to be cross-referenced to determine if a debtor had been making payments on open accounts, to wit, the billing records initially created by J.D. Matthews & Associates incident to billing for services rendered, and the Neurologic Associates, PLC receivables records indicating payment made by the debtors on their open accounts. H&J had to rely on Neurologic Associates, PLC's review of their records to determine whether or not there had been account activity on any given patient's account within the applicable statute of limitations due to the nature of Neurologic Associates, PLC's billing and collections arrangement. No review of the documents from the billing company (the exhibits attached with Plaintiff's Motion for Summary Judgment) would indicate if the debtor had made payments or otherwise agreed to a payment plan or such other accommodations with Neurologic Associates, PLC.

Unfortunately, Neurologic Associates, PLC made a mistake regarding Mr. Masters' account. However, as soon as the mistake was confirmed by H&J, H&J caused the suit against Mr. Masters to be dismissed ***before a formal response to the Warrant in Debt was required from Mr. Masters***. Mr. Masters and his legal counsel were both advised of this fact, yet they have persisted with the instant suit.

The instant matter is analogous to the matter of *Moya v. Hocking*, 10 F. Supp. 847 (W.D. Mich. 1998). In *Moya*, the attorney representing the creditor was unaware that the statute of limitation had run on a debt before filing suit. In that case, the debtor account information was supplied to the attorney by his client and it incorrectly indicated that the account was still active. *Id.* at 849-850. The *Moya* Court compared the facts in that case to those in the matter of *Smith v.*

*Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992).  In *Smith*, as in *Moya* and the instant case, the debt collector received incorrect information from the client despite the client having a procedure in place to ascertain the validity of claims. *Moya* at 850-51.

The *Moya* Court noted the evidence showed the attorney did not violate the FDCPA intentionally because he relied on incorrect information from the client, and he and his client had adopted procedures to avoid violations of the FDCPA. *Id*. at 850.  Accordingly, the *Moya* Court ruled that the attorney was entitled to the "bona fide error defense" provided in 15 U.S.C.S. § 1692k (c).

In the instant matter, H&J understood that all accounts from Neurologic Associates, PLC had been reviewed by it to ascertain the account balance due and the date of last activity on the account which made them eligible for collection.  This had to be done by Neurologic Associates, PLC due to their accounts receivables accounting system which reposited some information with J.D. Matthews & Associates and some at their office, and is a reasonable way to proceed given the circumstances.

In reliance on its understanding that the account was current, H&J filed suit.  Immediately after H&J was advised by Mr. Masters that the statute of limitations had passed, H&J confirmed that the account was indeed stale and caused the suit to be dismissed as soon as it was able– approximately one (1) month after the suit was filed and one (1) month before Mr. Masters was required to make a formal response.  In other words, the suit was dismissed as soon as practicable after the mistake was discovered and confirmed.

Given these undisputed facts, H&J has established by a preponderance of the evidence that:

1.      That the violation was unintentional;

2.        That the error was a genuine mistake as opposed to a contrived mistake; and

3.        H&J employed a procedure reasonably adapted to avoid the error.

Accordingly, H&J is entitled to the "bona fide error defense" provided in 15 U.S.C.S. § 1692k (c).

*Moya*, *supra*., and *Smith*, *supra*.  Summary Judgment in favor of H&J and against Mr. Masters is, therefore, appropriate.  H&J respectfully requests that this Honorable Court enter its Order denying Mr. Master's Motion for Summary Judgment, granting H&J's Cross-Motion for Summary Judgment, and dismissing the instant matter, with prejudice, together with any and all other relief which the Court deems to be appropriate.

                                       **RESPECTFULLY SUBMITTED:**

                                       **HARRISON & JOHNSTON, PLC**

                                       ***By Counsel***

HARRISON & JOHNSTON, PLC

        /s/

_____
Stephen L. Pettler, Jr. Esquire [Bar # 44436]
21 South Loudoun Street
Winchester, Virginia 22604
Tel. 540.667.1266
Fax. 540.667.1312
Email: pettler@harrison-johnston.com
*Attorneys for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2017, the foregoing document was caused to be filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of such filing to following intended recipient:

Taylor-Lee Wickersham Stokes
Law Office of Taylor-Lee W. Stokes, P.C.
6933 Commons Plaza, Suite 101
Chesterfield, Virginia 23832
twstokes@attorneysstokes.com

Matthew T. Sheffield
Law Offices of Michael Lupover
120 Sylvan Avenue, Suite 300
Englewood Cliffs, New Jersey 07632
ms@lupoverlaw.com

Additionally, a copy of the foregoing will also be sent to the recipients directly by email.

/s/

Stephen L. Pettler, Jr. Esquire [Bar # 44436]
21 South Loudoun Street
Winchester, Virginia 22604
Tel. 540.667.1266
Fax. 540.667.1312
Email: pettler@harrison-johnston.com